IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

FEEONQUAY JENKINS,

                              Plaintiff,                      OPINION AND ORDER

         v.                                                        24-cv-43-wmc

KEVIN A. CARR,
ELIZABETH DOE #1,
LARRY W. FUCHS,
RYAN M. BLOUNT,
CPT. KEVIN W. PITZEN,
CPT. ERIC H. PETERS,
LT. ETHAN D. MARCHESKI,
LT. DYLAN HOFFSTATTER,
LT. LORA FITZSIMMONS,
SGT. LUKAS ROBERTSON,
SGT. JOSEPH KRAUSE,
MICHAEL DOTSON,
JARRON V. BANKHEAD,
JOHN DOE #2, and
STACI WIESS,

                              Defendants.

Plaintiff Feeonquay Jenkins, a state prisoner who is representing himself, has filed an amended complaint under 42 U.S.C. § 1983, alleging violations of his constitutional rights during his confinement in the Wisconsin Department of Corrections ("DOC"). (Dkt. #3.) Jenkins, who has paid the filing fee, alleges that several correctional officers subjected him to invasive strip searches on two occasions in violation of the Fourth and Eighth Amendment. Jenkins claims that these searches were orchestrated by a ranking officer as a means to further his career. Jenkins alleges further that he was threatened with additional harm in violation of the Eighth Amendment if he failed to inform on another inmate and that other defendants failed to intervene on his behalf. Jenkins also alleges

that supervisory officials failed to respond adequately to his complaints about these violations.  Finally, Jenkins alleges that all defendants violated his First Amendment rights by retaliating against him after he complained.

Under 28 U.S.C. § 1915A, this court must screen every prisoner complaint and dismiss any claim that is legally frivolous or malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law cannot be sued for money damages.  When screening a complaint drafted by a non-lawyer, the court applies a less stringent standard.  *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).  However, plaintiff must still allege enough facts to show that he is plausibly entitled to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).  For the reasons explained below, the court will allow plaintiff to proceed with Fourth and Eighth Amendment claims against several of the defendants.  However, he will not be allowed to proceed with claims and supervisory officials for failing to investigate his grievances or his retaliation claims under the First Amendment.

ALLEGATIONS OF FACT[1]

**A.  The Parties**

Since January 2020, Jenkins has been incarcerated by DOC at the Columbia Correctional Institution ("CCI").

Jenkins sues the following defendants who are employed by DOC as correctional

_____

[1] The following allegations are taken from plaintiff's amended complaint, which the court accepts as true for purposes of screening.

officers or officials at CCI: (1) Captain Kevin W. Pitzen; (2) Captain Eric H. Peters; (3) Lieutenant Ethan D. Marcheski; (4) Lieutenant Dylan Hoffstatter; (5) Lieutenant Lora Fitzsimmons; (6) Sergeant Lukas Robertson; (7) Sergeant Joseph Krause; (8) Officer Michael Dotson; (9) Officer Jarron V. Bankhead; (10) Officer John Doe #2; (11) Warden Larry W. Fuchs; (12) Security Director Ryan M. Blount; and (13) Assistant Staci Wiess. Jenkins also sues former DOC Secretary Kevin A. Carr and Elizabeth Doe #1, who is described as a woman with long dark hair and arm tattoos from the DOC central office. In addition, although not included in the style of the complaint, Jenkins includes allegations against Officer Haug, who will be added as a defendant.

## B. Background

On May 3, 2023, defendants Hoffstatter, Robertson, and Dotson approached Jenkins' cell and informed him that he needed to submit to restraints for a cell search and that he would then be strip searched. Jenkins was told that the reason for the strip search was "because [they could]." After placing Jenkins in restraints, and despite his strong opposition, the officers performed a "staff-assisted strip search" in a nearby office. This search included a close inspection of Jenkins' genitals and a physical inspection of his anal cavity. When the strip search concluded, Jenkins was left standing naked for some time before being returned to his cell. Jenkins, who felt humiliated, reported the incident to defendant Fitzsimmons, who reportedly laughed and took no action to investigate.

On May 8, 2023, defendants Marcheski, Krause, Bankhead, and John Doe #2 approached Jenkins' cell, placed him in restraints, and began escorting him to restrictive housing. When they arrived at a changing room, Jenkins' clothes were cut off and he was

subjected to another staff-assisted strip search. When Jenkins asked why he was being searched, Marcheski responded that Jenkins had "failed to comply," which was untrue. After the search concluded, Jekins was taken to his new cell in restrictive housing. As a result of these "sexually assaultive" searches, Jenkins became suicidal.

On May 10, 2023, Haug escorted Jenkins from his cell in restrictive housing to a conference room where Marcheski and Elizabeth Doe #1 were waiting. When Jenkins asked what they wanted, Marcheski told Jenkins that he had received information about a plot by another CCI inmate named Antonio Smith to stab defendants Pitzen and Peters. According to Jenkins, Marcheski explained that staff were told to repeatedly strip search Jenkins because they wanted Jenkins to verify the information about Smith's plan. In other words, they wanted Jenkins to inform on Smith. When Jenkins responded that he had overheard some comments by another inmate about Smith wanting to stab Pitzen and Peters but knew nothing else, Marcheski grew frustrated. Marcheski then suggested that Jenkins had been paid to carry out a hit on Pitzen and Peters on Smith's behalf. Jenkins denied any involvement and asked to leave.

After Jenkins insisted he knew nothing and had nothing to do with the alleged plot by Smith, Marcheski ordered Haug to turn off his body worn camera in violation of prison policy. Once the camera was off, Marcheski reportedly asked Jenkins what it would take for Jenkins to say that Smith was plotting to kill Pitzen and Peters. When Jenkins refused, Marcheski persisted and offered him a time cut on his sentence. Marcheski then threatened Jenkins, telling him that a failure to inform on Smith would result in "staff [making his] life a living hell," that "[he would] live in segregation," and that "[s]taff

4

[would] stay in [his] ass like the girls [he] pimped out." While Jenkins debated what to do, Elizabeth Doe #1, who witnessed the intimidation but did nothing, reportedly remarked that she "wasn't there." Out of fear, Jenkins signed a confidential informant form with false testimony against Smith with details that were mostly filled in by Marcheski. Wiess was asked to witness Jenkins' signature on the form. Shortly after he signed the form, Smith was transferred to Waupun Correctional Institution ("WCI") and Jenkins was removed from restrictive housing.

Jenkins reportedly spoke to Warden Fuchs on May 4, 2023, and complained about the unwarranted strip search by staff on May 3. When Jenkins later inquired about the status of the investigation, Warden Fuchs replied in writing that the investigation had been completed and "the search was justified." (Dkt. #3-1.) Jenkins also apparently spoke to Warden Fuchs about the other strip search and Marcheski's intimidation tactics, but got no meaningful response. (Dkt. #3-2.) Instead, Fuchs told Jenkins that if he wanted to file a "PREA complaint" about the searches -- referencing the Prison Rape Elimination Act -- he could contact Security Director Blount. (*Id*. at 3.) Jenkins also sent a letter to Carr, a state senator, and some journalists, requesting an investigation into his mistreatment. (Dkt. #3-3.) In addition, Jenkins claims that he met several times with Captain Peters, who reportedly admitted that he directed staff to pressure Jenkins for information about Smith as a means to advance his career. Jenkins claims that, in response to his complaints, "the defendants and/or their colleagues" continued to abuse him by deciding to transfer him to WCI, where Smith was located.

OPINION

## I.  Invasive Strip-Searches

The Fourth Amendment safeguards the right to be free from unreasonable searches. U.S. Const. amend. IV ("The right of the people to be secure in their persons . . . shall not be violated[.]").  The Seventh Circuit has held that the "[t]he Fourth Amendment protects (in a severely limited way) an inmate's right to bodily privacy during visual inspections, subject to reasonable intrusions the realities of incarceration often demand."  *Henry v. Hulett*, 969 F.3d 769, 779 (7th Cir. 2020).  To prevail on a Fourth Amendment claim regarding a strip or body cavity search, a prisoner must show that the search was objectively unreasonable in light of "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979).

In addition, "[t]he Eighth Amendment's prohibition against cruel and unusual punishment stands as a protection from bodily searches which are maliciously motivated, unrelated to institutional security, and hence 'totally without penological justification.'" *Meriwether v. Faulkner*, 821 F.2d 408, 418 (7th Cir. 1987) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)); *see also Henry*, 969 F.3d at 781 (The Eighth Amendment safeguards convicted prisoners against the use of strip-searches that are subjectively intended as a form of "punishment" or "motivated by a desire to harass or humiliate").  To state an Eighth Amendment claim in this context, a prisoner must allege that the search amounted to "calculated harassment unrelated to prison needs" with the intent to humiliate and inflict psychological pain.  *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004) (citations

omitted).

Applying these standards here, plaintiff has alleged sufficient facts to proceed with claims under both the Fourth and Eighth Amendments against defendants Hoffstatter, Robertson, Dotson, Marcheski, Krause, Bankhead, and John Doe #2 for the invasive strip-searches conducted on May 3 and May 8, 2023.

Plaintiff may also proceed with Fourth and Eighth Amendment claims against defendant Peters, who reportedly directed staff to conduct these invasive strip-searches to pressure plaintiff into providing information about Smith to further his career. *See Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988) (holding that supervisors may be liable when "know about conduct facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see"). Because plaintiff provides no allegations showing that defendant Pitzen was similarly involved, the claims against Pitzen will be dismissed.

## II. Threats of Harm and Failure to Intervene

Plaintiff may also proceed with claims under the Eighth Amendment for the threats of future harm made by defendant Marcheski. Although "simple verbal harassment does not constitute cruel and unusual punishment," *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000), the threats attributed to defendant Marcheski appear to cross that line. Specifically, plaintiff alleges that Marcheski threatened him with more invasive strip searches and placements in restrictive housing, which had caused plaintiff to become suicidal. Because plaintiff alleges that Marcheski's threats placed him in fear of future harm, these allegations are sufficient to state a claim. *See Lisle v. Welborn*, 933 F.3d 705, at 718 (7th Cir. 2019) (harassment that causes "significant psychological harm" violates

the Eighth Amendment).

Plaintiff alleges further that defendant Haug turned off his body camera and that defendant Elizabeth Doe #1 sat by and did nothing while Marcheski was making these threats.  To succeed on a failure-to-intervene theory, a plaintiff must prove that the defendant failed to intervene with deliberate or reckless disregard for the plaintiff's constitutional rights.  *Fillmore v. Page*, 358 F.3d 496, 505-06 (7th Cir. 2004).  At this stage of the proceeding, the court will allow plaintiff to proceed with claims against Eliabeth Doe #1, assuming she can be identified, and Haug for failing to intervene in the alleged violation of plaintiff's rights caused by Marcheski's threats.  However, the court will not allow plaintiff to proceed with claims against Wiess, whose only involvement appears to be as an office assistant who entered the conference room to witness plaintiff signing the confidential informant form.  Because plaintiff does not allege sufficient facts showing that she knew threats were being made or had a reasonable opportunity intervene in Marcheski's wrongful actions, *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994), the claims against Wiess will be dismissed.

### III. Inadequate Investigation of Grievances

Plaintiff appears to allege that Warden Fuchs, former Secretary Carr, and Lieutenant Fitzsimmons failed to conduct an adequate investigation or ignored his complaints about being strip searched.  Plaintiff also appears to name Security Director Blount as a defendant because of his role in investigating PREA complaints, although he provides no other facts establishing Blount's actual involvement in such a complaint.

These claims fail because the Constitution does not require officials to investigate

or otherwise correct wrongdoing after it has happened. *Whitlock v. Brueggemann*, 682 F.3d 567, 588-89 (7th Cir. 2012); *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). Likewise, prison officials who review a prisoner's administrative complaint regarding a completed act of misconduct cannot be held liable for rejecting that complaint because "only persons who cause or participate in the violations are responsible." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). Because plaintiff fails to state a claim against defendants Fuchs, Carr, Fitzsimmons, and Blount, the claims against these individuals will be dismissed.

## IV. First Amendment Retaliation Claim

Plaintiff appears to claim that "all defendants" retaliated against him after he filed grievances complaining about improper strip-searches and intimidation. To state a First Amendment retaliation claim, plaintiff must allege that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the protected activity was at least a motivating factor in the defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

Plaintiff has not alleged sufficient facts to support a First Amendment claim. To begin, plaintiff fails to describe the personal involvement of any particular defendant in the alleged act of retaliation. *See Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) ("Individual liability under [42 U.S.C.] § 1983 . . . requires personal involvement in the alleged constitutional deprivation."); *Gonzalez v. McHenry Cty., Ill.*, 40 F.4th 824, 828 (7th Cir. 2022) (Section 1983 lawsuits "require personal involvement in the alleged constitutional deprivation to support a viable claim."). Moreover, the only specific

9

deprivation that plaintiff identifies is the alleged decision to transfer him to WCI. However, the pleadings and public records available from the DOC website reflect that plaintiff has remained at CCI.  Because the complained of transfer has not occurred, plaintiff will not be allowed to proceed with a First Amendment retaliation claim.

ORDER

IT IS ORDERED that:

1) The clerk's office is directed to revise the style of the case by adding defendant CO Haug.

2) Plaintiff Feeonquay Jenkins is GRANTED leave to proceed with Fourth and Eighth Amendment claims against defendants Dylan Hoffstatter, Lukas Robertson, Michael Dotson, Ethan Marcheski, Joseph Krause, Jarron Bankhead, John Doe #2, and Eric Peters for their role in subjecting plaintiff to invasive strip searches on May 3 and May 8, 2023.

3) Plaintiff is also GRANTED leave to proceed with Eighth Amendment claims against defendant Marcheski for making threats as well as defendants Haug and Elizabeth Doe #1 for failure to intervene in the alleged constitutional violation.

4) Plaintiff is DENIED leave to proceed with all other claims.  Therefore, defendants Kevin W. Pitzen, Lora Fitzsimmons, Larry W. Fuchs, Ryan M. Blount, Kevin A. Carr and Staci Wiess are DISMISSED.  The clerk's office shall terminate these defendants and revise the style of the case accordingly.

5) Pursuant to this court's informal service agreement with the Wisconsin Department of Justice, copies of the amended complaint (dkt. #3) and this order

10

are being sent today to the Attorney General for service on defendants Hoffstatter, Robertson, Dotson, Marcheski, Krause, Bankhead, John Doe #2, Elizabeth Doe #1, Haug and Peters. Under the agreement, the Department of Justice will have 60 days from the date of the Notice of Electronic Filing of this order to answer, plead or otherwise respond to plaintiff's complaint.

6) For the time being, plaintiff must send defendants a copy of every paper or document that he files with the court. Once plaintiff learns the name of the lawyer or lawyers who will be representing defendants, he should serve the lawyer directly rather than defendants. The court will disregard documents plaintiff submits that do not show on the court's copy that he has sent a copy to defendants or to defendants' attorney.

7) Plaintiff should keep a copy of all documents for his own files. If he is unable to use a photocopy machine, he may send out identical handwritten or typed copies of his documents.

8) If plaintiff is transferred or released while this case is pending, it is plaintiff's obligation to inform the court of his new address. If he fails to do this and defendants or the court are unable to locate him, his claims may be dismissed for his failure to prosecute them.

Entered this 26th day of February, 2025.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

11