IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

FEEONQUAY JENKINS,

      Plaintiff,

    v.                                 Case No. 2024CV00043

JARRON BANKHEAD, et al.,

      Defendants.

**STATE DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT ON EXHAUSTION GROUNDS**

Plaintiff Feeonquay Jenkins is proceeding on Fourth and Eighth Amendments claims against Defendants Dylan Hoffstatter, Lukas Robertson, Michael Dotson, Ethan Marczewski, Joseph Kraus, Jarron Bankhead, John Doe #2, and Eric Peters for their alleged role in subjecting him to invasive strip searches on May 3 and May 8, 2023. (Dkt. 10:10.) He is also proceeding on Eighth Amendment claims against Defendant Marczewski for making threats on May 10, 2023, as well as Defendants Timothy Houg and Elizabeth Doe #1 for failure to intervene in these alleged threats. (*Id.*) Jenkins failed to properly exhaust the administrative remedies for his claims against Defendants Marczewski, Houg, and Elizabeth Doe #1[1] that stem from the alleged May 10, 2023, incident. Therefore, these claims should be dismissed.

---

[1] The undersigned counsel does not represent Elizabeth Doe #1. However, the arguments in State Defendants' Motion for Partial Summary Judgment and associated brief should dispose of the claim against her as well.

## STATEMENT OF THE CASE

**BACKGROUND**

Jenkins is an inmate at Columbia Correctional Institution (CCI). (Dkt. 3:2; 18:2.) On January 19, 2024, he filed a Complaint to initiate this lawsuit under 42 U.S.C. § 1983. (Dkt. 1.) On February 26, 2025, he filed an Amended Complaint, (Dkt. 3), which is now the operative complaint in this lawsuit. (*See* Dkt. 10:1.) Jenkins was allowed to proceed on the following claims:

a. Fourth and Eighth Amendments claims against Defendants Hoffstatter, Robertson, Dotson, Marczewski, Kraus, Bankhead, and John Doe # for allegedly invasive strip-searches conducted on May 3 and May 8, 2023;

b. Fourth and Eighth Amendments claims against Defendant Peters based on allegations that he directed staff to conduct the invasive strip-searches to pressure Jenkins into providing information about another inmate, Antonio Smith, to further his career;

c. Eighth Amendment claim against Defendant Marczewski for alleged threats of future harm he made on May 10, 2023; and

d. Eighth Amendment claim against Defendants Houg and Eliabeth Doe #1 for failure to intervene in the alleged threats by Defendant Marczewski on May 10, 2023.

(Dkt. 10:7–8.)

With regards to the claims against Defendants Marczewski, Houg, and Elizabeth Doe #1, Jenkins alleges that, on May 10, 2023, Houg escorted him from his cell to a conference room where Marczewski and Elizabeth Doe #1 were waiting. (Dkt. 3:5.) Jenkins alleges that Marczewski told him information was received about a plot by inmate Smith to stab Defendant Peters and Captain Pitzen. (*Id*.) According to Jenkins, Marczewski explained that staff were told to repeatedly strip search him because they wanted him to inform on Smith. (*Id*.) Jenkins alleges that, when he said he had overheard some comments by another inmate about Smith's plan but knew nothing else, Marczewski became frustrated. (Dkt. 3:5–6.)

Jenkins alleges that Marczewski ordered Houg to turn off his body-worn camera then reportedly asked what it would take for Jenkins to say that Smith was plotting to kill Peters and Pitzen. (Dkt. 3:6.) Jenkins alleges that, when he refused lying on people, Marczewski offered him a time cut on his sentence and further threatened him, stating that a failure to inform on Smith would result in "staff [making his] life a living hell," that "[he would] live in segregation," and that "[s]taff [would] stay in [his] ass like the girls [he] pimped out." (*Id*.) According to Jenkins, Elizabeth Doe #1, who witnessed the intimidation but did nothing, remarked that she "wasn't there." (*Id*.) Jenkins alleges that he signed a confidential informant form with false testimony against Smith as a result. (*Id*.)

Corrections Complaint Examiner (CCE) Emily Davidson identified six inmate complaints potentially related to the claims that the Court allowed Jenkins to proceed on. (Davidson Decl. ¶¶ 8–10; *see* Ex. 1000.) Among these inmate complaints, five of

them pertain to the alleged strip searches on May 3 and May 8, 2023. (*See* Exs. 1001–1006.) The only inmate complaint related to the alleged threats from May 10, 2023 is CCI-2023-15584. (*See* Ex. 1007.)

**INMATE COMPLAINT CCI-2023-15584**

The Institution Complaint Examiner (ICE)'s Office received inmate complaint CCI-2023-15584 on October 16, 2023. (Davidson Decl. Ex. 1007, at 1.) There, Jenkins identified the incident date as May 10, 2023, and the one issue as: "Lt. Marcheski and WDOC Official used threats of ongoing sexual abuse to coerce me into giving false C.I. testimony against another incarcerated person . . . ." (*Id*. at 9.) He wrote the signature date of this inmate complaint as October 14, 2023. (*Id*.) He further wrote at the top of this complaint stating: "[Prison Rape Elimination Act (PREA)] Issue – exempt from 1/week limit." (*Id*.)

On October 16, 2023, the reviewing ICE rejected this inmate complaint pursuant to Wis. Admin. Code. § DOC 310.07(2), due to its untimeliness. (Davidson Decl. Ex. 1007, at 2–3.) The ICE explained:

> DOC 310.08(1) states: Notwithstanding s. DOC 310.07 (2), an inmate may file a complaint regarding sexual abuse or sexual harassment at any time. If a portion of the complaint alleges an issue that does not relate to sexual abuse or sexual harassment, the time limits under s. DOC 310.07 apply.
>
> Jenkins does not state an allegation of sexual abuse or sexual harassment on the DOC-400 the DOC 310.08(1) exemption does not apply.
>
> However, DOC 310.07(2) does apply: "An inmate shall file a complaint within 14 days after the occurrence giving rise to the complaint. At the discretion of the ICE, a late complaint may be accepted for good cause. An inmate shall request to file a late complaint in the written complaint and explicitly provide the reason for the late filing."
>
> Jenkins states a date of incident of 5-10-23. Jenkins' DOC-400 states a date signed of "10-14-23" and was received by the ICE office on 10-16-23.

> The complaint is late.
>
> The date of occurrence is determined to be 5-10-23 by Jenkins. It is beyond the 14-day time limit to file a complaint.
>
> Jenkins makes no plea for good cause. Jenkins does not present evidence to show how Jenkins was denied the use of or inhibited in any way from using the ICRS since the date of the occurrence. The complaint is rejected as it fails to adhere to the stated filing requirement.

(Davidson Decl. Ex. 1007, at 2–3.)

Jenkins appealed the ICE's rejection. (*See* Davidson Decl. Ex. 1007, at 11.) The RA received Jenkins's appeal on October 20, 2023. (*Id*. at 5.) On October 30, 2023, the RA affirmed the ICE's rejection pursuant to Wis. Admin. Code. § DOC 310.10(6),[2] on the basis of untimeliness. (*Id*. at 5.)

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is an "integral part of the Federal rules," and its purpose "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 327 (1986). A court's decision to grant summary judgment is not discretionary—when "a moving party shows that the opposing party lacks evidence to support each element of a claim, summary judgment must be granted in favor of the movant." *Baron v. Frederickson*, 419 F. Supp. 2d 1056, 1063 (W.D. Wis. 2006) (citation omitted).

---

[2] Wis. Admin. Code. § DOC 310.10(6)(e) states: "The ICE may reject a complaint for the following reasons: . . . The inmate submitted the complaint beyond 14 days after the date of the occurrence giving rise to the complaint and provides no good cause for the ICE to extend the time limits."

5

By its very terms, the summary judgment standard "provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A material fact is one that, under the applicable substantive law, might affect the outcome of the suit. *Anderson*, 477 U.S. at 248. The materiality determination rests on the substantive law because it identifies which facts are critical and which facts are irrelevant. *Id.* A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"The party moving for summary judgment has the initial burden of demonstrating there is no genuine dispute of material fact: it may discharge this responsibility by showing that there is an absence of evidence to support the nonmoving party's case." *Bunn v. Fed. Deposit Ins. Corp.*, 908 F.3d 290, 295 (7th Cir. 2018) (citations and internal quotation marks omitted). Once the movant satisfies his initial responsibility, the burden then shifts to the nonmovant, who must "come forward with specific facts demonstrating that there is a genuine issue for trial." *Id.* (citation omitted); *see also Celotex Corp.*, 477 U.S. at 324 ("[R]ule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial'"). A nonmovant is "entitled to all reasonable inferences in his favor, but 'inferences that are supported

6

by only speculation or conjecture will not defeat a summary judgment motion.'" *Lavite v. Dunstan*, 932 F.3d 1020, 1029 (7th Cir. 2019) (citation omitted).

## ARGUMENT

Defendants Marczewski and Houg are entitled to summary judgment because Jenkins did not exhaust his administrative remedies for the claims stemming from the alleged threats made on May 10, 2023.

### I. The Prison Litigation Reform Act (PLRA) requires an inmate to exhaust his administrative remedies before filing a lawsuit.

The PLRA "mandates that an inmate exhaust 'such remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, 578 U.S. 632, 635 (2016) (citation omitted). Specifically, it provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA speaks in "unambiguous" and "mandatory" terms—"An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Ross,* 578 U.S. at 638. As to reach, the PLRA "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

"To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). This means an inmate must properly pursue "each

7

step within the administrative process." *Id.* at 1024. The steps an inmate must follow are established by state law. *See Lanaghan v. Koch*, 902 F.3d 683, 687 (7th Cir. 2018) ("State law establishes the administrative remedies that a state prisoner must exhaust for purposes of the PLRA"). And they are "interpreted strictly," meaning "a 'prisoner must comply with the specific procedures and deadlines established by the prison's policy.'" *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016) (citation omitted). This means the PLRA requirement is not satisfied by the filing of an untimely or otherwise procedurally defective administrative grievance. *Woodford v. Ngo*, 548 U.S. 81, 83 (2006).

"Failure to exhaust 'is an affirmative defense, and the burden of proof is on the defendant[ ].'" *Lockett v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019) (citation omitted). Accordingly, the defendant must show the inmate's failure to exhaust. *Williams v. Ortiz*, 937 F.3d 936, 941 (7th Cir. 2019) (citation omitted). If the defendant meets this burden, a district court must dismiss the case. *See Ross,* 578 U.S. at 1857 ("[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion").

## II. Wisconsin inmates are required to exhaust their remedies through the administrative process outlined in Wis. Admin. Code ch. DOC 310.

Wisconsin's administrative procedures for inmate complaints are outlined in Wis. Admin. Code DOC ch. 310 (2018) (the Code). The Code makes clear its objective: "to afford inmates in institutions a process by which grievances may be expeditiously raised, investigated, and decided." Wis. Admin. Code DOC § 310.01(1); *see Lockett*,

937 F.3d at 1027 ("[T]he primary purpose of the exhaustion doctrine: it alerts the prison officials to the existence of the problem and affords an opportunity to repair the injury"). To achieve that purpose, the Code created the ICRS. Wis. Admin. Code DOC § 310.04(1). Under the ICRS, an inmate must "attempt to resolve [an] issue by following the designated process specific to the subject of the complaint" before filing a formal complaint. Wis. Admin. Code DOC § 310.07(1). If no resolution can be reached, an inmate must then "file a complaint within 14 days after the occurrence giving rise to the complaint." Wis. Admin. Code DOC § 310.07(2). Once an inmate files a complaint, the ICE collects and date-stamps all complaints with the date collected. Wis. Admin. Code DOC § 310.10(1).

An inmate complaint must contain sufficient information for the DOC to investigate and decide the complaint. Wis. Admin. Code DOC § 310.07(6). "Each complaint may contain only one clearly identified issue." Wis. Admin. Code DOC § 310.07(5). The ICE may return, reject, or accept and investigate an inmate complaint. *See* Wis. Admin. Code DOC § 310.10(2). The ICE may reject a complaint for one of nine reasons listed in the Code, including if the complaint is submitted beyond 14 days after the date of the occurrence giving rise to the complaint without good cause. Wis. Admin. Code DOC § 310.10(6) (listing the nine reasons an examiner may give for rejecting a complaint); 310.10(6)(e) (listing untimeliness as a reason for rejecting a complaint). If the ICE rejects the complaint, the inmate "may appeal . . . within 10 days" to the RA. Wis. Admin. Code DOC § 310.10(10). The RA examines only the basis

for the rejection of the complaint, and its decision on the rejected complaint is final. *Id.*

### III. Jenkins failed to exhaust the administrative remedies for his claims against Defendants Marczewski and Houg.

Jenkins failed to exhaust the administrative remedies for his claims against Defendants Marczewski and Houg.[3]

Under Wis. Admin. Code § DOC 310.08, "[a]n inmate may file a complaint regarding sexual abuse or sexual harassment at any time." However, "[i]f a portion of the complaint alleges an issue that does not relate to sexual abuse or sexual harassment, the time limits under s. DOC 310.07 apply." Wis. Admin. Code § DOC 310.08(1). In *Dotson v. Faulkner*, Doston alleged that Faulkner sexually assaulted her at Ellsworth Correctional Facility, and she suffered severe mental distress and emotional trauma as a result. No. 20-CV-1767, 2022 WL 1810698, at *1 (E.D. Wis. June 2, 2022). Dotson further alleged that another defendant, Finke, transferred her to Taycheedah Correctional Institution in retaliation for reporting the sexual assaults that occurred under Finke's supervision. (*Id.*) Additionally, Doston alleged that defendants Ustruck, Ruck, and Cooper were aware of her mental state but denied her access to psychological care. (*Id.*)

The Court dismissed Dotson's claims against Finke, Ustruck, Ruck, and Cooper based on her failure to exhaust administrative remedies. No. 20-CV-1767 at *5–6. In making this decision, the Court explained:

---

[3] State Defendants believe that Jenkins similarly failed to exhaust the administrative remedies for his claim against Elizabeth Doe #1.

> In *Poventud [v. Saldaris*, No. 18-CV-532, 2020 WL 1046095 (E.D. Wis. Mar. 4, 2020)], while the plaintiff filed a grievance under the PREA procedure for sexual assault, he did not file a grievance against the defendant psychologist for lack of psychological care under the ICRS because he believed the PREA investigation would cover his claim against the psychologist. *Id.* at *2. The court determined that while PREA modifies the process for grievance claims related to sexual abuse and sexual harassment, "it does not alter the inmate complaint grievance process for other grievances. Poventud's claim against Mink is based on her alleged failure to provide him with psychological care. Though he needed that care because he experienced sexual assault, his grievance was not about sexual assault. It was about lack of psychological care." *Id.* at *3. As such, the plaintiff was required to use the ICRS to exhaust his administrative remedies as it related to the lack of adequate psychological care.
>
> Similarly, Dotson cannot claim she exhausted her deliberate indifference claims for lack of psychological care or her First Amendment retaliation claims under the larger umbrella of her PREA investigation. Separate constitutional violations that may have been related to her sexual assault were required to be brought under the ICRS. The fact that other inmate complaints were dismissed because they were redundant does not excuse Dotson from attempting to grieve the additional constitutional claims just because she thinks they would have been rejected.

*Dotson*, No. 20-CV-1767 at *5 (citations omitted).

Here, the only inmate complaint pertaining to Jenkins's claims regarding the alleged threats from May 10, 2023, is inmate complaint CCI-2023-15584. Jenkins wrote the signature date of this inmate complaint as October 14, 2023, and the ICE's Office received the complaint on October 16, 2023. (Davidson Decl. Ex. 1007, at 1, 9.) Jenkins clearly identified the one issue as: "Lt. Marcheski and WDOC Official used threats of ongoing sexual abuse to coerce me into giving false C.I. testimony against another incarcerated person . . . ." (*Id.* at 9.) Although Jenkins wrote at the top of his inmate complaint: "PREA Issue – exempt from 1/week limit[,]" the reviewing ICE rejected Jenkin's complaint based on untimeliness and stated that, "Jenkins does not

11

state an allegation of sexual abuse or sexual harassment," and "the DOC 310.08(1) exemption does not apply." (Davidson Decl. Ex. 1007, at 2–3, 9.)

As mentioned, Jenkins's claims against Defendants Marczewski, Houg, and Elizabeth Doe #1 are: (1) Eighth Amendment claim against Marczewski for alleged threats of future harm he made on May 10, 2023; and (2) Eighth Amendment claim against Defendants Houg and Eliabeth Doe #1 for failure to intervene in the alleged threats by Defendant Marczewski on May 10, 2023. (Dkt. 10:7–8.) Because these claims are grievances separate from sexual abuse and sexual harassment, Wis. Admin. Code § DOC 310.07(2) applies, and the ICE/RA correctly rejected inmate complaint CCI-2023-15584 based on untimeliness. *See Streckenbach v. Meisner*, 768 F. App'x 565, 569 (7th Cir. 2019) ("the exhaustion requirement is strict, requiring a prisoner to complete the administrative review process in accordance with the applicable procedural rules, including deadlines").

Because Jenkins failed to exhaust the administrative remedies for his claims against Defendants Marczewski and Houg regarding the alleged threats from May 10, 2023, these claims should be dismissed from this lawsuit.

## CONCLUSION

Based upon the foregoing, State Defendants respectfully request the Court to grant their Motion for Partial Summary Judgment on Exhaustion Grounds.

Dated: September 17, 2025.

                Respectfully submitted,

                JOSHUA L. KAUL
                Attorney General of Wisconsin

                                                        s/ Emmeline Lee
                                                        EMMELINE LEE
Assistant Attorney General
State Bar #1097677

BRANDON T. FLUGAUR
Assistant Attorney General
State Bar #1074305

Attorneys for State Defendants

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-1178 (Lee)
(608) 266-1780 (Flugaur)
(608) 294-2907 (Fax)
Emmeline.Lee@wisdoj.gov
Brandon.Flugaur@wisdoj.gov

13